**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4010-22

VANESSA ZAPATA,

    Complainant-Appellant,

v.

FELLOWSHIP VILLAGE SENIOR
LIVING,

    Respondent-Respondent.

_____

Submitted October 17, 2024 – Decided November 18, 2024

Before Judges Mawla and Natali.

On appeal from the New Jersey Division on Civil Rights, Department of Law and Public Safety, Docket No. E2021-003496.

Vanessa Zapata, appellant pro se.

Hall Booth Smith, PC, attorneys for respondent Fellowship Senior Living (Jacqueline Voronov, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Division on Civil Rights (Janet Greenberg Cohen, Assistant Attorney General, of

counsel; Surinder K. Aggarwal, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Vanessa Zapata challenges an April 4, 2023 final determination of the Deputy Director of the Division on Civil Rights (the Division) finding no probable cause to support her complaint that her former employer, Fellowship Village Senior Living (Fellowship), discriminated against her on the basis of her religious practice. We affirm.

On November 17, 2021, appellant filed a verified complaint with the Division, alleging Fellowship "denied her promotion and terminated her employment, based on her religious practice and/or observance" in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Following the filing of her complaint, the Division conducted an investigation that revealed the following facts.

On May 21, 2020, Fellowship hired appellant as a life enrichment assistant. In that role, her responsibilities centered around resident care and included direct contact with Fellowship's senior population. In July 2021, appellant accepted a promotion to household coordinator. Prior to her promotion, Fellowship informed its employees on April 9, 2021, that "as a condition of continued employment everyone would be required to be

vaccinated [against COVID-19] once the emergency use authorization was lifted . . . ." In addition to managerial responsibilities, the household coordinator position similarly required direct contact with Fellowship's residents.

Appellant submitted a religious accommodation request form on September 7, 2021, seeking an exemption from Fellowship's vaccine requirement. In support of her request, appellant cited her belief that COVID-19 "vaccines use abortion derived cell line HGK-293[,]" and receiving such a vaccine would "make[] [her] complicit in an action that offends [her] religious faith." (emphasis omitted).

After "carefully review[ing]" appellant's request for a religious accommodation, on September 22, 2021, Fellowship denied her request and notified her by way of certified mail and email.[1] Fellowship explained to grant appellant an accommodation would "create undue hardship to Fellowship and compromise workplace and resident safety." Fellowship based its decision on the "nature" of appellant's position and the "population" Fellowship serves. After appellant refused to comply with Fellowship's vaccine mandate, Fellowship terminated her employment on October 14, 2021.

---

[1] According to appellant, she did not become aware of the September 22 letter until October 14, 2021, because Fellowship sent it "to the wrong address and a week late."

A-4010-22

As part of its investigation, the Division interviewed both appellant and Fellowship's director of human resources, Luisa Mota.[2]  In her interview, Mota stated Fellowship received four requests for religious accommodations and approved none of them.  Additionally, despite appellant's assertion that Fellowship granted a medical exemption to another individual who was also employed as a life enrichment assistant, Mota stated Fellowship did not receive any medical exemption requests and the employee referenced by appellant neither requested nor was granted an accommodation.

After concluding its investigation, on April 4, 2023, the Division issued a finding of no probable cause to support appellant's allegations of discrimination and retaliation.  Summarizing the Division's findings, Deputy Director Rosemary DiSavino explained "the investigation did not find sufficient evidence to support a reasonable suspicion that [Fellowship] discriminated against [appellant] because she requested or used a religious accommodation." Specifically, the Division found granting appellant's accommodation request would impose an undue hardship upon Fellowship "because it increased the risk that [appellant] could transmit [COVID-19] to vulnerable elderly residents, thereby interfering with the safe and efficient operation of the workplace."

---

[2]  Appellant's interview does not appear in the record.

Additionally, contrary to appellant's allegation that Fellowship terminated her employment because of her religious beliefs, the Division found the termination occurred because of her refusal to comply with its COVID-19 vaccine requirement, "which was created based on guidance from the CDC." In its decision, the Division informed appellant any appeal she may file must be submitted to our court within forty-five days.[3]

On appeal, appellant contends the Division's finding of no probable cause "is wrong as a matter of law because [she] . . . can provide evidence of [p]retext, [c]ausation, [t]emporal [p]roximity, and [c]at's [p]aw [t]heory of [l]iability against [Fellowship], in addition to [f]ailure to [p]romote and retaliation in violation of the Civil Rights Act of 1964 and the Civil Rights Act of 1991." She also reprises her argument that Fellowship "approved another employee's

_____

[3] We acknowledge appellant perfected her appeal 163 days after the Division rendered its decision, contrary to the requirement that an appeal must be perfected within forty-five days "from the date of service of the decision or notice of the action taken." R. 2:4-1(b). She did, however, mail what she characterized as a notice of appeal to all parties a day before it was due to the Clerk of the Appellate Division.

We may, in appropriate cases, grant leave to appeal nunc pro tunc. R. 2:4-4(b)(2). While such relief "is most extraordinary[,]" Frantzen v. Howard, 132 N.J. Super. 226, 227 (App. Div. 1975), under the circumstances, which included appellant's timely submission of her notice of appeal to the parties, we have decided to treat the appeal as timely on a nunc pro tunc basis and address the merits.

medical exemption request, an employee in the same department, performing the same daily duties."  We are unpersuaded.

"[T]he Appellate Division's initial review of [the Director's] decision is a limited one."  Wojtkowiak v. N.J. Motor Vehicle Comm'n, 439 N.J. Super. 1, 13 (App. Div. 2015) (alterations in original) (quoting Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988)).  We must give due regard to the Division's expertise and "survey the record to determine whether there is sufficient credible competent evidence in the record to support the agency head's conclusions."  Clowes, 109 N.J. at 587 (citing Goodman v. London Metals Exch., Inc., 86 N.J. 19, 28 (1988)).

We must sustain the Division's decision "unless the agency's decision is shown to have been 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'"  Wojtkowiak, 439 N.J. Super. at 13 (alteration in original) (quoting Barrick v. State, 218 N.J. 247, 259 (2014)).  In determining whether an agency's decision was arbitrary, capricious, or unreasonable, we examine:  (1) whether the agency's decision conforms with the law; (2) whether the decision is supported by substantial evidence in the record; and "(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not

reasonably have been made on a showing of the relevant factors." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).

The Division is tasked with preventing and eliminating discrimination in any manner prohibited by the LAD. See N.J.S.A. 10:5-6. Under the LAD, an individual alleging unlawful discrimination may file suit in the Superior Court or seek relief in the Division. Hermann v. Fairleigh Dickinson Univ., 183 N.J. Super. 500, 503 (App. Div. 1982) (citing N.J.S.A. 10:5-13).

When an individual files an administrative complaint, the Division must conduct an investigation to determine if probable cause exists to support the allegations of discrimination. See N.J.S.A. 10:5-14; N.J.A.C. 13:4-10.2(a). For purposes of this analysis, "probable cause" means "a reasonable ground of suspicion supported by facts and circumstances strong enough in themselves to warrant a cautious person to believe that the [LAD] . . . has been violated . . . ." N.J.A.C. 13:4-10.2(b). If the Director determines probable cause exists, the complaint will proceed to a hearing on the merits. N.J.A.C. 13:4-11.1(b). If the Director determines probable cause does not exist, however, that decision "shall be considered a final order" subject to appellate review. N.J.A.C. 13:4-10.2(e); R. 2:2-3(a)(2).

Under the LAD, it is unlawful for an employer to discriminate in promotion or terminate an employee based on the employee's religion or creed. See N.J.S.A. 10:5-12(a). Additionally, the LAD prohibits retaliation against individuals who engage in protected activity, including an employee who has requested a religious accommodation. See N.J.S.A. 10:5-12(d), (q)(1). In that regard, the LAD provides it is an unlawful employment practice:

> For any employer to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement or transfers, any terms or conditions that would require a person to violate or forego a sincerely held . . . religious belief, unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's religious [belief] . . . without undue hardship on the conduct of the employer's business.
>
> [N.J.S.A. 10:5-12(q)(1).]

The LAD proceeds to define undue hardship as "an accommodation requiring unreasonable expense or difficulty, unreasonable interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system or a violation of any provision of a bona fide collective bargaining agreement." N.J.S.A. 10:5-12(q)(3)(a). In addition to identifying several factors that should be considered in determining whether an accommodation

constitutes an undue hardship,[4] the LAD provides "[a]n accommodation shall be considered to constitute an undue hardship if it will result in the inability of an employee to perform the essential functions of the position in which [they are] employed." N.J.S.A. 10:5-12(q)(3)(c).

Here, having carefully reviewed the record before us, we find the Division's finding of no probable cause is supported by substantial credible evidence in the record. As noted, the Division conducted a thorough investigation that included interviews with appellant and Fellowship's director of human resources. Additionally, the Division reviewed documents submitted by the parties including, but not limited to: (1) a description of the life enrichment assistant position; (2) a description of the household coordinator position; (3) Fellowship's August 26, 2021 notice to employees regarding its COVID-19 vaccine mandate; (4) "[n]otice from [Fellowship]'s Executive Director Mark Aguilar, dated September 16, 2021"; (5) a copy of appellant's September 7, 2021 religious accommodation request form; (6) a copy of Fellowship's September 22, 2021 letter denying appellant's request for a

---

[4] Those factors include the cost of an accommodation, the number of individuals who will require that accommodation, and the degree to which providing the accommodation would affect an employer with multiple facilities. N.J.S.A. 10:5-12(q)(3)(b)(i) to (iii).

religious accommodation; and (7) various email correspondence between appellant and Fellowship management personnel.

Based on the entirety of this record, the Division found Fellowship declined to grant appellant's request for a religious accommodation because it would interfere "with the safe and efficient operation of the workplace" and increase the risk that appellant could transmit COVID-19 to Fellowship's vulnerable elderly residents. Additionally, contrary to appellant's argument that Fellowship granted another employee employed in the same role as her a medical accommodation, the Division's investigation revealed that Fellowship did not grant any of its employees an exemption to its vaccine mandate, religious or medical. And the Division clearly considered that investigation and concluded it "failed to find that probable cause exists to credit the allegations in [appellant's] complaint . . . ." We are satisfied the record provides "sufficient credible competent evidence" to support the Division's findings. Clowes, 109 N.J. at 587.

To the extent we have not specifically addressed any of appellant's arguments it is because we have concluded they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-4010-22